IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOY VASSER and AMY LUSANE, Individually and on Behalf of All Others Similarly Situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MAPCO EXPRESS, INC.<br><br>    *Defendant*. | COLLECTIVE ACTION<br><br>CASE NO. 3:20-cv-00665<br><br>JUDGE CRENSHAW<br><br>MAGISTRATE JUDGE HOLMES<br><br>JURY DEMAND |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SETTLEMENT APPROVAL

Named Plaintiffs Joy Vasser and Amy Lusane, on behalf of themselves and the Opt-In Plaintiffs in this collective action (collectively "Plaintiffs") submit this brief in support of their Unopposed Motion for Approval of Settlement and Dismissal with Prejudice.

### I. SUMMARY OF CASE AND PROPOSED SETTLEMENT AGREEMENT

Named Plaintiffs brought this action on behalf of themselves and other similarly situated MAPCO Express, Inc. ("Mapco") Store Managers ("SMs").

This case was filed on July 31, 2020, and Plaintiffs later filed the operative amended complaint on October 9, 2020, seeking to recover wages equal to those earned by their male comparators while employed as SMs pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"). Following Plaintiffs' successful motion for conditional certification, Court-supervised notice was issued. Two-Hundred Seven (207) Opt-In Plaintiffs, in addition to the two (2) Named Plaintiffs, asserted their EPA claims in this action. In this action, Plaintiffs claimed that

Defendant was not paying its female SMs equally, in comparison to Mapco's male SMs for the same work. Defendant denies Plaintiffs' allegations.

The Parties' Settlement Agreement, attached to Plaintiffs' Unopposed Motion as **Exhibit 1**, includes the following salient provisions:

1. Payments totaling $730,833.33 to the Named and Opt-In Plaintiffs representing unpaid wages and liquidated damages under the EPA;

2. Service Payments to Named Plaintiffs of $7,500.00 each for their service as Named Plaintiffs of the collective in this action and in exchange for a general release of their claims against Defendant;

3. Payment to Plaintiffs' counsel of $379,166.67 for their fees and advanced costs incurred in litigating this matter at an amount below the amount of fees actually incurred by Plaintiffs; and

4. The cost of Settlement Administration, which is not to exceed $12,500.00.

The Parties represent that the terms of their Agreement represent a fair and reasonable compromise of the claims in this action.

## II. THE PARTIES' SETTLEMENT, ATTORNEYS' FEES, AND SERVICE PAYMENTS ARE FAIR, REASONABLE AND SHOULD BE APPROVED.

Courts review settlements under the FLSA to ensure that they are fair and reasonable. *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1028 (W.D. Tenn. 2016); *Nutting v. Unilever Mfg. (U.S.) Inc.*, No. 2:14-CV-02239-JPM, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Rampersad v. Certified Installation LLC*, No. 1:12-cv-00032, 2012 WL 5906878, at *1 (E.D. Tenn. Nov. 26, 2012).[1]

---

[1] The Equal Pay Act is an amendment to the Fair Labor Standards Act that provides for the "the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974); *see also* 29 U.S.C. § 206(d). The Equal Pay Act's prohibition on gender-based wage discrimination is enforced through the FLSA's collective action mechanism. *See* 29 U.S.C. § 206(d)(3); 29 U.S.C. § 216(b).

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-5669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *Trauth v. Spearmint Rhino Cos. Worldwide*, No. 09-cv-1316, 2012 WL 4755682, at *5 (C.D. Cal. Oct. 5, 2012); *cf. O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (standards for certification of an FLSA collective action are less stringent than under Rule 23). This is because, unlike in a Rule 23 class action, there are no absent class members in a 216(b) collective action. Rather, in a 216(b) collective action like this one, each Opt-In Plaintiff has affirmatively consented to join the case as a plaintiff and agreed to be bound by any judgment or settlement reached by the Named Plaintiffs and their counsel.

A collective action settlement need only reflect a reasonable compromise of contested litigation involving a *bona fide* dispute between the parties. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. Civ. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citations omitted); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Rampersad*, 2012 WL 5906878, at *1; *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012).

### A. The proposed settlement represents a fair and reasonable compromise of Plaintiffs' claims.

The proposed settlement represents a fair and reasonable compromise of Plaintiffs' claims. The Parties have several *bona fide* disputes over the issues in this litigation, including, but not limited to: (i) whether equitable tolling of the statute of limitations on the claims of all members of the EPA Collective should be granted from the date the original complaint was filed until the members of the EPA Collective are provided with reasonable notice of the pendency of

3

this action and a fair opportunity to exercise their rights to opt-in as Plaintiffs; (ii) whether Mapco's pay and employment decisions, policies, practices, and/or procedures are in violation of the Equal Pay Act and if any such violations are willful; (iii) whether an award of back pay to Plaintiffs and the members of the EPA Collective should be paid by Defendant; (iv) whether an award of liquidated damages should be paid by Defendant to Plaintiffs and the members of the EPA Collective; (v) whether an award of litigation costs and expenses should be paid by Defendant to Plaintiffs and the members of the EPA Collective, including, but not limited to, reasonable attorneys' fees; (vi) whether to award Plaintiffs and the members of the EPA Collective pre-judgment and post-judgment interest on any award granted; (vii) the applicable statute of limitations, pursuant to 29 U.S.C. § 255; (viii) whether Mapco's operations nationwide constitute a single establishment; (ix) the amount and method of calculation for any pay differential; and (x) the amount of damages, if any. With these issues in mind, the parties engaged in discovery focused on the necessary exchange of information to allow each side to assess the strengths and weaknesses of Plaintiffs' claims. Armed with that information, the parties engaged in mediation that was facilitated by Michael Russell, an experienced mediator in employment law and collective action litigation. In light of the considerable risk, cost, and uncertainty of continued litigation, Plaintiffs submit that the Parties' Settlement Agreement should be approved by the Court as being fair and reasonable.

Importantly, the settlement amount and formula used by the Plaintiffs' counsel to calculate each Opt-In Plaintiffs' damages was based on information exchanged during discovery and reflects a data-driven compromise of the disputed factual issues in the case. The central dispute in this case was Plaintiffs' claim that Defendant maintained a common policy and practice of paying them less than similarly situated male colleagues on the basis of their gender,

even though they performed similar duties requiring the same skill, effort, and responsibility as male SMs. Defendant denies any liability. Thus, Plaintiffs would have had to prove, that any pay disparity that existed was not the byproduct of a lawful pay determination, meaning a pay decision unrelated to Plaintiffs' gender. Recognizing the uncertainties and risks inherent in litigation, Plaintiffs and Defendant ultimately reached a compromise that pays the Named and Opt-In Plaintiffs $1,137,500.00 for their EPA claims.

Based on the pay data provided to Plaintiffs by Defendant, this amount represents approximately 86% of the unpaid wages the Named and Opt-In Plaintiffs could have recovered had they prevailed on their theory that they should receive all wages associated with Plaintiffs' pay disparity allegations.[2] Plaintiffs and their counsel have considered the certainty provided by a Court-approved settlement as well as the risks of continued litigation associated with Plaintiffs' claims, including but not limited to: the potential risks of the Court grating Defendant's anticipated dispositive motions, which would likely argue, among other things, that Defendant's stores nationwide do not constitute a single establishment; the potential risk that the Court could grant the Defendant's anticipated motion for decertification; the high burden of proving that Defendant's violations were willful; and the potential risk that the Court or a jury finding that Plaintiffs had not proven damages for all workweeks. In light of these risks, Plaintiffs and their counsel submit that the secured settlement represents a fair and reasonable resolution.

Likewise, the other terms of the Settlement Agreement are the product of good-faith, arms-length negotiations during a mediation attended by the Parties and their counsel. For example, Named Plaintiffs Vasser and Lusane are receiving separate consideration of $7,500.00 as a service payment for their substantial efforts on behalf of the Opt-In Plaintiffs, their

---

[2] When comparing the settlement amount to the damage calculations contained in Plaintiffs' Expert Report.

5

assistance to counsel, and for their provision of a general release. Named Plaintiffs' efforts in this case were substantial. They spoke extensively with counsel during the investigation stage of this case prior to the filing of the initial complaint. *See* Declaration of Marc S. Hepworth at 2-3. Named Plaintiffs also worked with Plaintiffs' Counsel to ensure that needed information was elicited during discovery. *Id.* They also provided critical information concerning comparator pay, responded to written discovery and, along with the other opt-ins that participated the action prior to the issuance of notice, provided deposition testimony. *Id.*

Under such circumstances, this Court and other courts routinely approve similar service payments in line with what the settlement agreement here would provide for Named Plaintiffs Lusane and Vasser. *Hawkins v. Middle Tennessee Pizza, Inc.*, No. 3:21-cv-266, 2022 WL 337197 (M.D. Tenn. Jan. 19, 2022) (Crenshaw, *C.J.*) (approving $7,500 service payment); *Barbee v. Navihealth, Inc.*, No. 3:19-cv-119, 2020 WL 6365515 (M.D. Tenn. Sept. 21, 2020) (Crenshaw, *C.J.*) (approving $31,000 in service payments to four named plaintiffs—an average of $7,750); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving service payment of $12,500 to the named plaintiff in FCRA, finding "that the incentive award does not undermine the fairness of the settlement"); *Dallas v. Alcatel-Lucent USA, Inc.,* No. 09-14596, 2013 WL 2197624, at *11 (E.D. Mich. May 20, 2013) (incentive payments justified where plaintiffs "responded to discovery requests, including document productions; participated in many conferences with Plaintiffs' counsel; and took the risk of joining this litigation at an early stage"); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) (finding incentive payments justified).

Named Plaintiffs' substantial efforts, and the outcome achieved as a result of those efforts, justifies their service payments. Moreover, in exchange for their service payments, Named Plaintiffs have agreed to a general release of claims they may have against Defendant.

### B.     One-Third of the Common Fund Is A Fair and Reasonable Fee.

Under the EPA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiff's Counsel would receive a third, meaning up to $379,166.67 of the Maximum Gross Settlement Amount as attorneys' fees and reimbursement of out-of-pocket costs and expenses which total $30,843.10, plus payment out of the Maximum Gross Settlement Amount for the cost of the Settlement Administration. *See* Declaration of Marc S. Hepworth at 5-6.

While there are two methods by which to calculate a fee award, the lodestar and the percentage-of-the-fund methods, district courts have discretion "to select the more appropriate method for calculating attorney's fees in light of the unique circumstances of class actions in general, and of the unique circumstances of the actual cases before them." *Fitzgerald v. P.L. Mktg., Inc.,* 2020 WL 3621250, at *5 (W.D. Tenn. July 2, 2020) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). Where "[t]he resolution of this case has created a common benefit fund for the class, . . . it is appropriate to assess attorney's fees against the fund." *Hosp. Auth. of Metro. Gov't v. Momenta Pharm., Inc.*,

No. 3:15-cv-1100, at *1 (M.D. Tenn. May 29, 2020) (Crenshaw, *C.J.*) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The percentage of the fund that Plaintiffs seek here falls squarely within the range this Court and others have approved in other collective action cases. *See, e.g.*, *Hawkins v. Middle Tennessee Pizza, Inc.*, No. 3:21-cv-266, 2022 WL 337197 (M.D. Tenn. Jan. 19, 2022) (Crenshaw, *C.J.*) (approving 1/3 of common fund for fees in FLSA collective action plus litigation expenses and settlement administration costs); *Barbee v. Navihealth, Inc.*, No. 3:19-cv-119, 2020 WL 6365515 (M.D. Tenn. Sept. 21, 2020) (Crenshaw, *C.J.*) (approving 33.33% of common fund in class and collective wage-and-hour settlement plus litigation expenses and settlement administration costs); *Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2058762, at *8 (D. Kan. July 14, 2009) (noting the same about the requested fee award, which was 33% of the common fund); *Koehler v. Freightquote.com, Inc.*, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (also approving fee award equal to 33% of the common fund).

Accordingly, an award of one-third of the common fund plus out-of-pocket costs and expenses is abundantly reasonable in this case and is in accordance with the standard set in this district as well as nationally.

### C. Plaintiffs' Counsel's Request for Fees is Reasonable Under the Circumstances.

In exercising their discretion, district courts in the Sixth Circuit often address the "*Ramey* factors":

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Fitzgerald v. P.L. Mktg., Inc.,* 2020 WL 3621250, at *5 (W.D. Tenn. July 2, 2020) (quoting *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009); *see also Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974).

These factors overwhelmingly weigh in favor of an award of one-third of the common fund and a finding that this fee is reasonable under the circumstances**.**

1. **The Value Of The Benefit Rendered To The Plaintiff Class**

Plaintiffs' Counsel obtained an excellent result for all Plaintiffs, as described in detail above and in the accompanying Settlement Agreement. The maximum amount that could have been collected under any calculation was $1,315,243.09, exclusive of liquidated damages. This settlement of $1,137,500.00, will on average pay Plaintiffs approximately $6,000.00, this is an excellent value for their claims, particularly when considering the inherent risks to continued litigation and the very real possibility that Plaintiffs would not prevail on every contested issue in this action.

2. **The Value Of The Services On An Hourly Basis And Whether Services Were Undertaken On A Contingent Fee Basis**

Plaintiffs' Counsel took this case on a contingency-fee basis. Accordingly, Plaintiffs' Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiffs or the collective. Moreover, Plaintiffs Counsel's contingency arrangement required them to invest both time and expenses with no guaranty of recoupment. Hepworth Decl. at 2.

This case required Plaintiffs' Counsel to expend significant time and labor in pursuing these claims and the amount of fees sought is less than Plaintiffs' Counsel's lodestar fee. Specifically, Plaintiffs' Counsel has litigated the claims in this case for nearly two years and has collectively invested over 890.3 hours working on this case with no assurance of any recovery at all. Hepworth Decl. at 4-6. These hours include time spent investigating the facts of this case;

9

interviewing SMs regarding their pay, work experiences and their knowledge concerning the existence of a pay differential; gathering, drafting and responding to written discovery requests; gathering Plaintiff's discovery; preparing for and taking the 30(b)(6) deposition of Defendant's corporate witnesses, preparing for and defending the depositions of Plaintiffs and the pre-notice Opt-ins, briefing Plaintiffs' successful motion for conditional certification and organizing the issuance of notice using a Third-Party Administrator; drafting and preparing opposition to Defendant's Sixth Circuit petition for writ of mandamus concerning Plaintiffs' successful award of conditional certification; briefing, orally arguing, and retaining an ethics expert to address Defendant's challenge to Plaintiffs' consent to join form; administering notice to putative opt-in plaintiffs; preparing status reports; appearing for all court conferences; analyzing pay and time records; retaining two separate experts, reviewing and creating a damages model and performing damage calculations in preparation for mediation; mediating this action; negotiating a settlement favorable to all Plaintiffs; devising a settlement allocation formula to ensure an equitable distribution of funds; and drafting the Settlement Agreement and approval papers. Hepworth Decl. at 2-4.

And, while this District and other courts within this Circuit have applied a "lodestar cross-check" to determine whether fees sought are reasonable, Plaintiffs' Counsel are seeking an amount less than their lodestar with this settlement. As of the filing of this application, Plaintiffs' Counsel collective lodestar is $540,989.00 at their standard hourly rate.[3]

The fees sought by Plaintiffs' Counsel are certainly reasonable considering that courts routinely approve multipliers above and beyond the lodestar as reasonable fee awards in class cases. *See*, *e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at

---

[3] Plaintiffs' Counsel's standard hourly rates have been consistently approved by courts throughout the country. Hepworth Decl. at 4-9.

10
Case 3:20-cv-00665    Document 158    Filed 03/28/22    Page 10 of 14 PageID #: 1574

*5 (E.D.N.Y. Sept. 28, 2018) (collecting cases in which courts routinely approve fees that are "two to six times the lodestar"); *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *9 (E.D.N.Y. Sept. 26, 2018) (same); *accord Tanski v. AvalonBay Communities, Inc.*, No. 15 Civ. 6260, 2020 WL 2733989, at *3 (E.D.N.Y. May 26, 2020) (collecting cases with multipliers ranging from 2.02 to 3.5 and noting that multipliers exceeding 4 are routine); *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at *3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *Koehler*, 2016 WL 3743098, at *6 (approving fee award equivalent to 1.3 times the Court's determined lodestar amount as reasonable).

As such, given that Plaintiffs seek to recover an amount equivalent to the time and labor invested in this case, this factor weighs heavily in favor of approving the fee as reasonable. It is important to remember that this is Plaintiffs' Counsel's only opportunity to be awarded fees for the work on this case. However, their work to administer the settlement will continue after this application without any compensation. Hepworth Decl. at 4-5. As an example, there will be inquiries from the Plaintiffs and Opt-ins regarding the terms and consequences of the settlement and the computation and payout of the settlement. Counsel will perform this work without any additional compensation. *Id.*

3. **Society's Stake, The Complexity Of The Litigation and Skill Of Counsel Involved On Both Sides**.

Out-of-state Plaintiffs' Counsel practices almost exclusively in plaintiff-side collective actions. Hepworth Decl. at 5-9. Likewise, Plaintiffs' Local Counsel devote a majority of their practice to class and collective wage-and-hour litigation as well as other complex litigation, both

before this Court and before federal and state courts across the country. *See* Exhibit B to Hepworth Decl., Barrett Johnston Martin & Garrison, LLC Firm Resume. Plaintiffs' Counsel stays abreast of the changing law to ensure they maximize their clients' recovery in their cases pending all across the United States. Hepworth Decl. at 2-3. This is because it is a unique and specialized area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country. *See id*.

Despite the extent of gender pay disparity that exists across this country, according to widely available employment data on male and female pay, comparatively few firms litigate EPA collective action cases, due to the necessary investment of time, energy, and financial resources as well as the emphasis on expert discovery, which are required to appropriately pursue them. Due to the nature of EPA collective litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended. Hepworth Decl. at 2. This type of risk is outside the scope of risk that most attorneys and firms are willing to handle. Moreover, Defense Counsel in this case is one of the world's largest employment and labor law defense side law firms, highly ranked by a number or law firm rating services. This case was hard fought, involving the briefing of five substantive motions, including a motion to dismiss, conditional certification motion, and an expedited Sixth Circuit petition for writ of mandamus. The parties hotly contested the claims and defenses in this action. Prior to settlement had both retained experts to challenge key aspect of the Plaintiffs' claims. Had this matter not settled additional complex work would have been required including but not limited to: the conclusion of expert discovery; second phase discovery on the large collective that opted into this action; the briefing of

12

dispositive motions and a motion for decertification; and a potential collective action trial to resolve the claims of the entire collective.

Thus, these factors, including the skill of counsel, complexity of the action and importance of the claims at issue all favor fee approval.

### III. CONCLUSION

For the reasons stated above, Plaintiffs submit that the Court should approve all aspects of the Settlement Agreement as fair and reasonable, and enter the proposed order attached to their Motion approving the settlement and dismissing this case with prejudice.

Dated: March 28, 2022

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**JOSHUA A. FRANK (No. 33294)**
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

Marc S. Hepworth*
Charles Gershbaum*
David A. Roth*
Rebecca S. Predovan*
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
mhepworth@hgrlawyers.com
cgershbaum@hgrlawyers.com
droth@hgrlawyers.com
rpredovan@hgrlawyers.com
*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

# CERTIFICATE OF SERVICE

I hereby certify that a copy of *Memorandum of Law in Support of the Motion for Settlement Approval* was filed electronically with the Clerk's office by using the CM/ECF system and will be served via the Court's ECF system on the following counsel for Defendant as listed below on March 28, 2022:

**J. CHRISTOPHER ANDERSON**
LITTLER MENDELSON, P.C. (Nashville)
333 Commerce Street, Suite 1450
Nashville, TN 37201
Telephone: (615) 383-0775
Facsimile: (615) 691-7976
chrisanderson@littler.com

**PATRICIA J. MARTIN**
LITTLER MENDELSON, P.C.
600 Washington Avenue, Suite 900
Saint Louis, MO 631010
Telephone: 314-659-2011
pmartin@littler.com

**ALLAN G. KING**
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: 512-982-7252
agking@littler.com

*Attorneys for Defendant*

        /s/ David W. Garrison
        DAVID W. GARRISON
        **BARRETT JOHNSTON MARTIN &**
        **GARRISON, LLC**